HENRY SMITH v. OXFORD IRON COMPANY.

1. In a suit by a servant, the negligence by which he is injured, to be actionable, must be that of the master, or such as can be imputed to the master.

2. To constitute persons fellow-servants, they need not be on a parity of service; it is sufficient if they be engaged in the same common work and acting for the accomplishment of the same general purpose.

3. A corporation is liable to its servant for the negligence of its president, who is its chief executive officer, in the discharge of those duties which the corporation owes to its servants. In that case, the negligence of the president is the negligence of the company itself.

In case. On rule to show cause.

Argued at June Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff, *Henry S. Harris.*

For the defendants, *J. G. Shipman* and *J. D. Bedle.*

The opinion of the court was delivered by

VAN SYCKEL, J. The plaintiff, while engaged in the service of the Oxford Iron Company, as a miner, in September, 1874, lost his eyes, and was otherwise severely injured, by an explosion of giant powder. The plaintiff charged the company with negligence in introducing the new explosive without informing his superiors or instructing him as to the proper manner of using it, and without advising him fully of its dangerous character. The verdict below was for the plaintiff, and the case is here on rule to show cause why a new trial should not be granted.

The negligence, to be actionable, must be that of the company. A servant who is injured by the negligence of a fellow-servant, cannot maintain an action against the master

for such injury. The general rule which gives immunity to the superior, results from considerations of justice, as well as of policy. The theory is that one who engages in the employment of another, for the performance of specified services for hire, takes upon himself the ordinary risks and perils incident to the performance of such services, and, in legal presumption, the compensation is adjusted accordingly. *Paulmier* v. *Erie R. R. Co.*, 5 *Vroom* 151; *McAndrews* v. *Burns*, 10 *Vroom* 117.

To constitute persons fellow-servants, they need not be engaged in the same place or in the same particular work. It is sufficient if they are in the service of the same master, engaged in the same common work and acting for the accomplishment of the same general purpose. That to exempt the master, the servant to whose negligence the injury is to be attributed, need not be on a parity of service with the party injured, nor be engaged in the same particular work, is established by a long line of cases. *Charles* v. *Walker*, 38 *L. T. Rep.* (*N. S.*) 773; *Searle* v. *Lindsay*, 11 *C. B.* (*N. S.*) 429; *Morgan* v. *Vale of Neath R. R. Co.*, *L. R.*, 1 *Q. B.* 149; *Feltham* v. *England*, *L. R.*, 2 *Q. B.* 33; *Howell* v. *Landore Co.*, *L. R.*, 10 *Q. B.* 62; *Wright* v. *N. Y. Central R. R. Co.*, 25 *N. Y.* 562; *Wilson* v. *Merry*, 1 *H. L. Sc. App.* 326; *Warner* v. *Erie R. R. Co.*, 39 *N. Y.* 468; *Charles* v. *Taylor*, 3 *L. R.*, *C. P. Div.* 492; *Lehigh Valley Coal Co.* v. *Jones*, 86 *Penna. St.* 432; *Wharton on Negligence*, § 229, and notes.

But if there is negligence on the part of the master in selecting proper servants, or in furnishing safe appliances for the conduct of the business, the master is responsible.

The contention, in these cases, has been as to when the negligence of the servant can be imputed to the master. Authorities of great weight have held that if the master places the entire charge of the business in the hands of an agent, exercising no authority therein, he may be liable for the negligence of such agent to a subordinate employé, and that this rule prevails, whether the master be an individual or a corporation. Otherwise, corporations would escape liability,

owing to the fact that their business must necessarily be transacted by agents.

In *Mullan* v. *Philadelphia and Southern Mail Steamship Co.*, 78 *Penna. St.* 25, Justice Woodward delivered the opinion of the court, saying that "Where a master places the entire charge of his business, or a branch of it, in the hands of an agent, exercising no discretion, and no oversight of his own, the neglect of the agent, of ordinary care in supplying and maintaining suitable instrumentalities for the work required, is a breach of duty for which the master should be liable. The negligence of the agent, with such power, becomes the negligence of the master."

In *Frazier* v. *Pennsylvania R. R. Co*, 38 *Penna. St.* 104, the suit was by a brakeman, for personal injury caused by negligence of a conductor. The plaintiff rested his right to recover upon the alleged carelessness of the superintendent of the company, whose duty it was to employ conductors, in the selection of this conductor.

Chief Justice Lowrie delivered the opinion of the court, declaring that the superintendent stood for the company, in this respect, and that his negligence was the negligence of the company.

*Ardesco Oil Co.* v. *Gilson*, 63 *Penna. St.* 146, was a suit by an employé who was injured by an explosion of stills. The stills were constructed under the direction of the president of the company, who was not an expert in that business, and who was without the experience necessary for that work. The stills were found by the jury to be of insufficient strength, and for the imperfect construction of them by the president, the company was held liable. The officer having charge of their business was regarded, for all practical purposes, as the corporation itself.

In *Patterson* v. *Pittsburg and Connellsville R. R. Co.*, 76 *Penna. St.* 389, the plaintiff was conductor of the defendants' train, and was injured by reason of the defective construction of the side track on which he was required to run out. The superintendent and foreman of the road had notice of the

defect. The court charged the company with the negligence of the officer who had the care of the construction and maintenance of the side track.

In *Huntington and Broad Top R. R. Co.* v. *Decker*, 84 *Penna. St.* 419, the plaintiff was the wife of an engineer who was killed by the carelessness of the conductor. The recovery below was by reason of the alleged unfitness of the conductor, which was known to the superintendent of the road. The judgment was affirmed.

Justice Woodward declares the rule to be that "Where a master places the entire charge of his business, or a distinct branch of it, in the hands of an agent, exercising no discretion and no oversight, the neglect of the agent of ordinary care in supplying and maintaining suitable instrumentalities, is a breach of duty for which the master is liable." *Mullan* v. *Philadelphia and Southern Steamship Co.*, 78 *Penna. St.* 25.

In Ohio, where one servant is placed by his employer in a position of subordination, and subject to the orders and control of another, and such inferior servant, in the discharge of his duties, is injured, without fault of his own, by the negligence of the superior servant, the master is liable. *Cleveland, &c., R. R. Co.* v. *Keary*, 3 *Ohio St.* 201 ; *Berea Stone Co.* v. *Kraft*, 31 *Ohio St.* 287.

But where no control is given to one over another, an action will not lie. *Whaalan* v. *Mad River R. R. Co.*, 8 *Ohio St.* 249.

The Supreme Court of Misssouri, in *Cook* v. *Hann. & St. Jo. R. R. Co.*, 63 *Mo.* 397, decided that a superintendent of work was a vice-principal of the railway company, and that his negligence, by which a teamster in the employ of the company was injured, was imputable to the company.

The same court held that an architect and superintendent who has general charge of the erection of a building, is not a fellow-servant with those at work on the same. *Whalen* v. *Centenary Church*, 62 *Mo.* 326.

Justice Cooley, in *Chicago R. R. Co.* v. *Bayfield*, 37 *Mich.* 205, held that the conductor of a construction train was not

a fellow-servant with a common laborer employed on the train.

In Tennessee, a section boss on a railroad is not regarded as a fellow-servant of those who work under him. *Louisville, &c., R. R. Co.* v. *Bowler*, 9 *Heisk.* 866; *Nashville R. R. Co.* v. *Jones, Id.* 27.

The superintendent of a railway company, who has been clothed, by the board of directors, with power to act as the immediate representative of the company, its corporate executive officer, entrusted with the power of the board of directors, so far as relates to the management and control of its trains, is the *alter ego* of the company, and not a fellow-servant with ordinary employés. *Washburn* v. *Nashville R. R. Co.*, 3 *Head* 638.

The rule is ably discussed by Justice Folger, in *Laning* v. *New York Central R. R. Co.*, 49 *N. Y.* 521, where he says that "The duty of the master to the servant, and the implied contract between them, is to the effect that the master shall furnish proper and adequate machinery and appliances for his work, and shall employ skilful and competent fellow-servants, and shall use due and reasonable care to that end. This duty is to be affirmatively and positively fulfilled and performed."

The same view was expressed by Chief Justice Church, in delivering the opinion of the court in *Flike* v. *Boston and Albany R. R. Co.*, 53 *N. Y.* 549, 553: "The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge, as master or principal, without regard to the rank or title of the agent entrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and, consequently, liable for the manner in which they are performed. If an agent whose duty it is to employ servants or provide materials for the company, acts negligently in that capacity, his fault is that of the company,

because it occurred in the performance of the principal's duty, although only an agent himself."

In *Ford* v. *Fitchburg R. R. Co.*, 110 *Mass.* 240, the Supreme Court of Massachusetts held that "The rule of law which exempts the master from responsibility does not excuse the employer from the exercise of ordinary care in supplying suitable instrumentalities for the performance of the required work, and the fact that it is a duty which must always be discharged, when the employer is a corporation, by officers and agents, does not relieve the corporation from the obligation."

In *Brickner* v. *New York Central R. R. Co.*, 2 *Lans.* 506, after full review of the cases, the rule was declared to be that "Where a corporation, through its directors, commits the charge of its business to the hands of an agent, exercising no superintendence over him, the corporation will be liable to a subordinate employé for the negligence of such agent in employing co-servants, or in providing suitable appliances for the work." Affirmed in 49 *N. Y.* 672.

*Malone* v. *Hathaway*, 64 *N. Y.* 5, makes the distinction between natural and artificial persons—that it is only where the master withdraws from the management of the business, entrusting it to a middle-man, or superior servant, or where, as in case of a corporation, the business is of such a nature that the general management and control thereof is necessarily committed to agents, that the master can be held liable to a subordinate for the negligent acts of one thus placed in his stead. Under this rule, a foreman who had no delegation of power or control, but who was merely charged with special duties, was held to be a fellow-servant.

The doctrine of the case last cited is declared by Mr. Wharton, in his work on Negligence, § 229, to be in harmony with the American cases. The English courts have not assented to this rule. *Howells* v. *Landore Steel Co., L. R.*, 10 *Q. B.* 63; *Wilson* v. *Merry, L. R.*, 1 *H. L. Sc. & Div. App.* 326; *Feltham* v. *England, L. R.*, 2 *Q. B.* 33.

In Howells *v.* Landore Co., Chief Justice Cockburn said

Smith v. Oxford Iron Co.

that, since the decision of Wilson *v.* Merry, the doctrine asserted in *Murphy* v. *Smith,* 19 *C. B.* (*N. S.*) 361, as to the liability of the master for the acts of a person whom he leaves as his vice-principal in the care of his business, is exploded.

In a case prior to this, the same learned judge had strongly inclined to a different view.

This question has attracted so much attention in England, that it has been made the subject of recent legislation.

There can be no difference between liability to a stranger and to a servant, for a person's own negligence or want of skill. No court has yet declared that a person, either natural or artificial, is not responsible for his own carelessness to his servant. On the contrary, every case has assumed that such responsibility existed. It has been universally conceded that there are certain duties which a corporation must perform towards its servants, such as the furnishing of proper instrumentalities and the using of due care in selecting co-servants, which cannot be neglected without consequent liability. The struggle has been to determine when the want of care could be imputed to the principal—when he could be considered as present and acting or failing to act.

Inasmuch as a corporation cannot act personally, responsibility for negligence cannot exist unless it is held for the act of some agent or employé. Without a voice of its own, it must speak through another. Inanimate, and without capacity to act by itself, its functions must be performed, and its obligations to its agents discharged through some representative, whose act is its act, whose control is its control, and whose negligence is its negligence. The board of directors, the president—every one in employment, from the highest to the lowest—is an agent and servant of the company.

The purchase of materials and appliances, the employment and discharge of men, must be done by agents. Corporate powers can be exerted, and corporate duties performed, in no other way. Unless absolute immunity is granted to a corporation, there must be some executive officer who stands in

the place of the principal, representing him and charged with his duty.

The case of *Paulmier* v. *Erie R. R. Co.*, 5 *Vroom* 151, recognizes the liability of a corporation to an employé, for negligence in those duties which it is required to perform as principal or master. The servant was injured by a defect in the construction of the trestle-work, but it does not appear for whose fault the company was held liable.

It is not necessary, for the decision of the case in hand, to adopt a view as rigorous against corporations as that expressed in the cases cited, nor is it necessary to establish a rule applicable to all cases that may arise. No rule more favorable to the corporation can be adopted than to hold that it is present and acting in the person of its chief executive officer, the president. His neglect to perform those duties which devolve upon the company, should be regarded as the neglect of the company itself. To this extent, at least, it is safe to carry the doctrine. While the master is not held as guaranteeing the absolute safety of machinery or appliances provided for his employés, or the fitness of co-servants, he is bound to observe such care as the exigencies of the situation reasonably require in selecting them. Any injury resulting to a co-servant from the failure of the company positively to perform this duty, is actionable.

When the plaintiff engaged in the service of the defendant, the ordinary blasting powder was used, and, under his contract with the company to labor as a miner, he assumed the risk of personal injury, in blasting with the ordinary agency used for that purpose. He did not agree to subject himself to the hazard attending the use of an unusual and highly-explosive substance, of the dangerous quality of which, as well as of the proper manner of applying it, he was wholly ignorant. It appears that Selden T. Scranton, the president of the defendant company, to whose care was committed the superintendence of the business of the corporation, in April, 1874, introduced the use of giant powder. It is clearly shown that it was a highly-dangerous explosive, and that the

Smith v. Oxford Iron Co.

proper manner of using it was not made known to the plain-tiff, although printed instructions were in the possession of the company. Before allowing this new compound to be introduced, it was a duty which the company owed to the plaintiff to ascertain and make known its properties and the mode of using it, either to the plaintiff himself or those under whose direction he worked. The obligation to do so rested upon Scranton, as the head officer of the company, and his neglect in that respect was the neglect of the company itself. It was gross negligence in the company to furnish such an article for a laborer's use without giving him the requisite information. Whether the company was aware of its dangerous quality, or furnished it for use without having taken steps to obtain such knowledge, it is equally liable. It was a duty which the company, through Scranton, was bound to perform, to see that such reasonable care as the exigency of the case demanded, was taken, and to impart to the subordinates full information as to the manner of applying the new compound, before placing it in the hands of an ignorant laborer.

This obligation resting on the company itself, the president could not shift their liability by referring the matter to one of his subordinates. The effect of such a rule would be to substantially absolve a corporation from all liability.

There was a clear failure on the part of the president to use the care which, under the circumstances of the case, the law exacted from the defendant, and his neglect must be imputed to the company.

The other questions discussed by counsel have been carefully considered. No reason appears to me why the verdict should be disturbed.

The rule to show cause should be discharged.