JESSE A. DEAN, Respondent, v. KANSAS CITY, CLINTON & SPRINGFIELD RY. CO., Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. **RAILROADS: Negligence: Defective Brake: Emergency Order.** Plaintiff, a laborer, with four others, all in charge of a foreman for a railroad company, was engaged in loading ballast into a standing car with a defective brake. The process of loading was by wheeling the ballast up a long and heavy gang plank which was fastended to the side board of the car by a spike. The foreman was half way up the plank with a barrow load of ballast, when he felt the car move and he called out excitedly to the men: "The car is going; catch it; are the brakes off? Catch it." Plaintiff and others immediately ran to stop the car, picking up a block to "chock" the wheels. This having no effect, plaintiff, seeing that one of the others who had climbed onto the car could not tighten the brake sufficiently to stop it, on account of its defect, undertook to climb onto the car, which was moving slowly, to help him. While thus attempting to get up, the gang plank was "twisted" loose from the side board, fell and struck him, inflicting severe injury. It was *held*, that in such emergency in obeying such order, plaintiff could not be held to be negligent or blameable for not selecting a safer mode to get upon the car, and that the company was liable for ordering plaintiff into such dangerous place.

2. ———: ———: ———: **Knowledge of Master: Dangerous Place.** Although a railway company may not be chargeable with negligence in permitting a place to become dangerous and unsafe, yet if it knows the place is in that condition, it is liable for ordering one of its servants into such place, if the danger is not so glaring and obvious as would prevent an ordinarily prudent man, in the same circumstances, from obeying the order.

Appeal from Pettis Circuit Court.—*Hon. Charles Hoffman*, Judge.

AFFIRMED.

*John H. Lucas* and *Montgomery & Montgomery* for appellant.

(1) Liability does not follow every negligent act even though injury does ensue. There can be no recovery unless the negligence pleaded was the proximate cause of injury, that is, was an act which, in natural and continuous sequence, unbroken by any new responsible cause, produced the injury. Hicks v. Railroad, 46 Mo. App. 309; Oats v. Railroad, 168 Mo. 548. The court having found and declared by declaration 7 that neither the defective or absent brakes, nor the failure to block the cars, was the proximate cause, respondent's case must stand upon the alleged negligent order of the foreman. (2) It is a familiar principle, which common sense as well as the rules of law ought to teach anyone, that where an employe of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence. Bailey on Personal Injury, sec. 1121 and 1123, quoted with approval in Moore v. Railroad, 146 Mo. 582; Also in Montgomery v. Railroad, 109 Mo. App. 94; George v. Mfg. Co., 159 Mo. 339; Craig v. Ry. Co., 54 Mo. App. 527; Doerr v. Brewery Assn., 176 Mo., 556. (3) The defendant did not insure the safety of its employes. It was bound only to use reasonable and ordinary care to provide for them a safe place to do their work and they assumed the ordinary risks of employment in which they were engaged. Roberts v. Tel. Co., 156 Mo., 380.

*H. L. Poague, E. A. Gracey* and *O. L. Houts* for respondent.

(1) The order was an act of negligence. It was the duty of the defendant to exercise reasonable care in furnishing plaintiff a reasonably safe place in which to work. It failed to perform that duty. On the contrary through its section foreman after the cars started to move it ordered plaintiff to stop them and into a place

of danger, by reason of which he was injured. That constituted actionable negligence upon the part of the defendant, and authorized a recovery upon the part of plaintiff in this suit. Stephens v. Railroad, 96 Mo. 207; Same case, 86 Mo. 221; Schroder v. Railroad, 108 Mo. 322; Hunn v. Railroad, 92 Mo. 440; Keegan v. Cavanaugh, 62 Mo. 230; Hyatt v. Railroad, 19 Mo. App. 296; Heriman v. Railroad, 27 Mo. App. 444. (2) It avails defendant nothing to say in this case that its foreman's attention was directed to his own efforts to stop the cars after he gave the order, that was not the fault of the plaintiff. Stephens v. Ry., 96 Mo. 213; Morgan v. Ry., 136 Mo. App. 341. (3) There was no assumed risk in this case. The statement of defendant that, "That order did not lay any duty on Dean that would not have rested upon him if no order had been given" amounts to a statement that plaintiff assumed the unknown danger or risk arising from the negligence of defendant's foreman in giving this order. A servant never assumes risks caused by negligence of the master. Stafford v. Adams, 113 Mo. App. 723-4; Trent v. Printing Co., 141 Mo. App. 437; King v. Ry., 143 Mo. App. 279; Strickland v. Wodsworth & Co., 143 Mo. App. 528; Curtis v. McNair, 173 Mo. 270. (4) Plaintiff was not guilty of contributory negligence. Defendant has not thought enough of that defense to plead it. The allegation in defendant's answer "that if the plaintiff was injured at the time and place alleged, such injury was by reason of the negligence of plaintiff" was not a plea of contributory negligence. Cain v. Wintersteen, 144 Mo. App. 1. (5) The damages assessed by the court were compensatory and not excessive. Herndon v. Springfield, 147 Mo. App. 516; Hitt v. Kansas City, 110 Mo. App. 713. (6) The authorities cited by the defendant do not apply to this case. The cases cited by defendant were not based upon and do not involve questions arising out of an emergency order or a command given to a servant by his master. Moore v. Railroad, 146 Mo. 581.

Dean v. Railroad.

ELLISON, J.—Plaintiff was an employee of defendant as a section laborer under the immediate charge and orders of a foreman. He was injured in such service, and, claiming that defendant's negligence was the cause of the injury, he brought this action for damages and obtained judgment in the trial court.

Plaintiff, with the foreman and four other section men, six in all, came to the scene of the injury in a "motor car," now in some use on railway tracks by section men, instead of the ordinary "hand car," intending to load "ballast" onto two cars standing on a side or spur track. The motor car was stopped several feet before getting to the standing cars, and it was down grade from the latter to the motor. There was a pile of ballast 25 or 30 feet from the track and it was being loaded onto the flat car, which had side boards, so as to carry larger loads. The loading was prepared for by attaching two heavy gang planks, 34 feet long, one near each end, and rolling the ballast up these planks in wheelbarrows. In order to keep the planks in place they, or at least the one which figures in this case, was spiked to the top of the side board of the car, while the other end rested on the ground near the pile of ballast. The car being loaded had a defective brake and the other one had no brake. Plaintiff had spoken to the car repairer about the defective brake several days before and the latter had promised to repair it, and plaintiff supposed he had done so. The foreman announced to the men that the cars were ready for loading and plaintiff had wheeled up some loads and dumped them in the car. But at the time of the mishap the foreman himself was wheeling up, while the others were loading into the barrows. While on the plank, about midway up, the foreman felt it move under him, and he called out in a rapid utterance to the men: "The car's going; catch it; are the brakes off? Catch it." The men ran to the car, plaintiff picked up a block as he ran and tried to stop it by "chocking the wheels," but could not. Fearing it would run

into the standing motor car, several feet down the track, he ran to it and started it by pushing so that it would get out of the way, and then ran back to the moving ballast car. He noticed one of the hands, a boy 16 years old, up in the car trying to set the brake, but he was not strong enough, because the brake shoe clasped the flange instead of the flat of the wheel. Plaintiff saw the difficulty as he came running back to the car, which was yet moving very slowly, and thought best to get on the car and help to tighten the brake. To do so, he grabbed the top of the side board of the car with both hands, two or three feet forward of the point to which the gang plank was spiked. He placed his foot on the oil box of the wheel and endeavored to pull himself up. In the mean time the car continued to move. The spiked end of the plank on the car moved with the car and the other end being on the ground, the tendency was to bring the plank around towards, and, in a measure, parallel with the side of the car. The end on the car began to loosen the spikes and to "twist off," till presently it broke loose and fell or slid down the side of the car onto plaintiff, dragging him from his place where he was in the act of getting on the car, and falling upon him and inflicting severe injury. All of this was done in a very short space of time. As was stated in the argument, "it was done in less time than it takes to tell it." Plaintiff heard the imperative and excited order of the foreman, and he sprang to the rescue. The foreman himself testified that "no man stopped to parry or inquire." It seems to us not becoming in defendant now to criticise his mode of executing the order. He deserves praise rather than blame. It was all under the foreman's immediate direction and observation. In the foreman's alarm he had called attention to the brakes. Disobedience to the foreman, or slowness in attempting to obey, might have meant great disaster by the cars getting away.

The foreman represented the company and he gave an order which involved a hazard considering what was required. It commanded plaintiff to stop or catch the car and asked if the brakes were off. The terms of the order were no less than saying if the brakes were off, to set them, if it could not be stopped otherwise.

But defendant says he chose the most hazardous way. That he should have gone to the other side of the car so the gang plank could not have fallen upon him. Is plaintiff to be held to perfection of judgment in such an emergency? Would defendant have one of its servants, facing such situation, move slowly, or maybe stop and ponder? The young man trying to fasten the brake had climbed up on the same side plaintiff attempted and the foreman did not object.

We do not see any valid or reasonable ground upon which we could place a reversal. Defendant was liberally treated by the trial court. Indeed, its instruction No. 7, withdrawing certain charges of negligence as unsupported by the evidence, should not have been given.

The evidence tended to show that plaintiff was ordred into a place known to defendant to be unsafe and dangerous, and yet, in the circumstances, it was not so obviously dangerous as to leave the servant without redress if he obeyed. [Stephens v. Ry. Co., 96 Mo. 207; s. c., 86 Mo. 221; Schroeder v. Ry. Co., 108 Mo. 322; Clippard v. Transit Co., 202 Mo. 432; Burkard v. Rope Co., 217 Mo. 466.]

It will not do to say that because the court instructed that certain charges of negligence in the position of the cars and the condition of the brake, were not to be attributed to defendant's negligence, that defendant is thereby in any way excused from the consequences of the order. If a place is dangerous and unsafe, it is wrong for the master to knowingly send the servant into it, whether it became unsafe through the act of the master or from some other cause.

We do not consider the damages to be excessive, and finding no error in the record, we affirm the judgment. All concur.